IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL ZAHOR,

Petitioner

v.

GEORGE WALKER BUSH, *et al.*,

Respondents.

Civil Action No. 05-1011 (JR)

**DECLARATION OF TERESA A. McPALMER**

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information and belief, the following is true, accurate and correct:

1. I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2. I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Abdul Zahor that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or have been redacted. An OARDEC staff member redacted information that would personally identify U.S. Government personnel and foreign nationals in order to protect the personal security of those individuals. This staff member also redacted internee serial numbers because certain combinations of internee serial numbers with other information relate to sensitive internal and intelligence operations that is not suitable for public release.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1 June 2005

Teresa A. McPalmer
CDR, JAGC, USN



**Department of Defense**
**Director, Combatant Status Review Tribunals**

OARDEC/Ser: 073

18 MAR 2005

~~FOR OFFICIAL USE ONLY~~

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #[redacted]**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #[redacted] meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John B. Wiegmann)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

15 Mar 05

MEMORANDUM

From: Legal Advisor
To: Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #[redacted]

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #33 of 8 March 2005
(2) Appointing Order for Tribunal #24 of 26 November 2004
(3) Record of Addendum Tribunal Proceedings
(4) Record of Original Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

a. The detainee was properly notified of the tribunal process and elected to participate. The detainee provided a sworn statement to the tribunal.

b. The two tribunals that considered the detainee's case were properly convened and constituted by enclosures (1) and (2).

c. The tribunals substantially complied with the provisions of references (a) and (b). Note that some information in exhibit R-4 was redacted. The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

d. The detainee did not request that any witnesses or other evidence be produced.

e. On 1 December 2004 a tribunal unanimously determined that the detainee should no longer be classified as an enemy combatant. On 9 March 2005 the tribunal was re-opened for consideration of additional evidence. This additional evidence became exhibits R-27 and R-28 (attached to enclosure (3)). Due to the detachment from OARDEC of one of the three members of the original tribunal panel, the additional evidence, along with the original evidence and original Tribunal Decision Report, was presented to tribunal panel #33 to reconsider the detainee's status. The tribunal president and tribunal judge advocate for both the original and the addendum proceedings were the same. Following their consideration of the additional information along with the original information, the second tribunal unanimously determined that the detainee was properly classified as an enemy combatant.

f. Tribunal panel #33's decision that detainee #[redacted] is properly classified as an enemy combatant was unanimous.

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #[redacted]

g. The detainee's personal representatives were given the opportunity to review the records of proceedings and declined to submit post-tribunal comments to the tribunals.

2. The proceedings and decision of the tribunal meet the minimum requirements for legal sufficiency and no corrective action is required as a matter of law.

3. We must determine whether this detainee has had a fair and meaningful opportunity to contest his status as an enemy combatant before an independent tribunal; and whether the Government possesses sufficient evidence to properly classify him as an enemy combatant. With regard to the first question, the detainee actively participated in the tribunal proceedings and presented his story to the tribunal. With regard to the second question, in analyzing whether there was sufficient evidence to support a tribunal's status decision I have customarily used the test of whether there was sufficient evidence for a reasonable finder of fact to have found the detainee was an enemy combatant by a preponderance of the evidence. Given the low evidentiary hurdle posed by a preponderance of the evidence standard and the rebuttable presumption of authenticity and accuracy that attaches to the Government Evidence, I believe that the test is satisfied in this case.[1] That is to say that reasonable finders of fact could determine that this detainee meets the definition of "enemy combatant" based on the evidence presented.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN

[1] In paragraph 6 of enclosure 1 of the original Tribunal Decision Report, the tribunal discussed its "consultations with the CSRT legal advisor." Due to the way this paragraph is worded a reader might conclude that the first tribunal misunderstood the proper definition of "enemy combatant." The tribunal described guidance it received from the Assistant Legal Advisor regarding the explanatory language accompanying the definition of "enemy combatant" contained in the references. One could interpret the tribunal's description as indicating that the original tribunal, with the advice of the Assistant Legal Advisor, discarded the phrase, "or has directly supported hostilities" from the definition. Of course, that would be an error because one can be an enemy combatant without ever having personally committed a belligerent act. For instance, a Taliban cook, miles from the front lines and not carrying a weapon, is still an enemy combatant, much the same as a U.S. Navy judge advocate, typing a legal opinion in an office and armed with no weapon other than his trusty letter opener, is still a combatant (albeit a *lawful* combatant). I think it more likely that the tribunal was trying to emphasize the point that "belligerent acts," as well as "support for hostilities," must be in aid of enemy armed forces on order to meet the definition.



# Department of Defense
## Director, Combatant Status Review Tribunals

8 Mar 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #33

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

[redacted] Colonel, U.S. Air Force; President

[redacted], Lieutenant Colonel, U.S. Air Force; Member (JAG)

[redacted], Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

26 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #24

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

<u>MEMBERS</u>:

[redacted], Colonel, U.S. Air Force; President

[redacted], Lieutenant Colonel, U.S. Air Force; Member (JAG)

[redacted], Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy

UNCLASSIFIED//~~FOUO~~

**Personal Representative Review of the Record of Proceedings**

I acknowledge that on 09 March 2005 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #


I have no comments.

__My comments are attached.


LCDR. USN

9 MAR 05
DATE



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

28 January 2005

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander ICO ISN

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN

CHARLES E. JAMISON
CAPT, USN

Encl. (4)

[redacted]

# (U) Combatant Status Review Tribunal Decision Report Cover Sheet

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: #24

(U) ISN#: [redacted]

Ref: (a) (U) Convening Order for Tribunal #24 of 26 November 2004 (U)
(b) (U) CSRT Implementation Directive of 29 July 2004 (U)
(c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U[redacted]
(2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
(3) (U) Summary of Detainee/Witness Testimony (U[redacted]
(4) (U) Copies of Documentary Evidence Presented (S/NF)
(5) (U) Personal Representative's Record Review (U[redacted]

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 1 December 2004 the Tribunal determined, by a preponderance of the evidence, that Detainee #[redacted] shall no longer be classified as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal has determined that this detainee shall no longer be classified as an enemy combatant as defined in reference (c), as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

[redacted] Colonel, USAF
Tribunal President

DERV FM: Multiple Sources
DECLASS: XI

[redacted]

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

**(Enclosure (1) to Combatant Status Review Tribunal Decision Report)**

TRIBUNAL PANEL: #24
ISN #: ______

## 1. Introduction

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee shall no longer be classified as an enemy combatant as defined in reference (c). In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder (Exhibit R-1) indicated that the detainee had knowledge of and was involved in a bomb plot against an embassy to include knowing the location of the bomb. The unclassified evidence also stated the detainee was imprisoned for serving under a Taliban commander and had documentation that addressed himself as a commander and also included references of surface to air missiles and personalities identified as the detainee's troops. The detainee was alleged to be a member of "Hezbi-Islami Galbuddin" (HIG) which has ties to al Qaida. The detainee chose to participate in the Tribunal process. He called no witness, requested no document be produced, and made a sworn verbal statement. The detainee, in his verbal statement, denied being a Taliban member and denied being a member of HIG. He also denied being involved in a bomb plot. The detainee testified that he was informing the U.S. forces of a bomb plot. During the hearing, the detainee stated that he was taking medication and a little tired. The Tribunal noted the detainee had a cast on his left ankle/foot. The hearing was recessed once to provide the detainee water. The detainee volunteered that he was able to provide statements and answer questions. The Tribunal President's evidentiary and witness rulings are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

a. Exhibits: D-a and R-1 through R-26.

b. Testimony of the following persons: none.

c. Sworn statement of the detainee.



**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses: no ruling was required.

The Detainee requested no additional evidence be produced: no ruling was required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The recorder offered Exhibits R-1 through R-3 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Exhibit R-3 was an extract from the U.S. Department of Homeland Security's Terrorist Organization Reference Guide which provided a summary level description of the Hizb-I-Islami Gulbuddin (HIG) organization. (Note: The tribunal recognized there are different spellings of this organization's name in R-1 and R-3 but accepted that both spellings referred to the same organization.) Accordingly, the Tribunal had to look primarily to classified exhibits (as well as the detainee's statement) for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the detainee's sworn testimony. A summarized transcript of the detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the detainee testified that he was never a member of the Taliban and was not a member of HIG. He stated that HIG members killed three of his brothers and also shot him twice. The detainee stated he was sent to prison from approximately 1992 until 1996 by [redacted] who had united with HIG. The detainee testified that he was not part of a bomb plot against the U.S. or United Kingdom embassies. Instead, he testified that he had heard about the plot from a girl named [redacted] and had volunteered this information to the U.S. authorities. Also, the detainee testified that he was illiterate and that documentation he had when he was arrested was a notebook which had belonged to his deceased brother which he used for keeping money and contained some notes written by others. The detainee testified that one of the notes he had included descriptions of surface to air missiles prepared by an engineer friend named [redacted] The descriptions included the price the United Nations would pay for them if turned in.

**6. Consultations with the CSRT Legal Advisor**

The Tribunal consulted the CSRT Assistant Legal Advisor during the course of this hearing on the following matters: Specifically, the Tribunal requested a clarification of the specific use of the word "or" in the enemy combatant definition's second sentence related to committing a belligerent act. The definition is provided in reference (c). The portion of the definition is "This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces." The CSRT Legal Advisor advised that to be classified as an enemy combatant the person would have had to commit a belligerent act in aid of enemy armed forces.

Enemy armed forces are defined as Taliban or al Qaida forces or associated forces that are engaged in hostilities against the U.S. or its coalition partners. Essentially the second sentence of the definition of reference (c) can therefore be read as "this includes any person who has committed a belligerent act in aid of enemy armed forces." This clarification was of significant importance to the Tribunal during its deliberations.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The detainee understood the Tribunal proceedings. He indicated that he understood the proceedings, fully participated in his hearing, asked relevant questions, and provided helpful information during his sworn statement. The Tribunal was convinced by his active and thoughtful dialog that any medication he may have taken did not appear to negatively impact his participation in the proceedings.

c. The detainee shall no longer be classified as an enemy combatant as defined in reference (c).

**8. Dissenting Tribunal Member's Report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

[redacted] Colonel, USAF
Tribunal President

**Summarized Sworn Detainee Statement**

***The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.***

***The Recorder presented Exhibits R-2 thru R-3 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).***

***The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.***

***The detainee stated to the Tribunal President that he wanted to make a statement. The Detainee also took the Muslim oath.***

Detainee: I am sorry, I am under medication right now from my doctor. It makes me thirsty and dizzy, so if I don't say things properly I apologize. Everything I will say is the truth.

Tribunal President: Do you need any water before we proceed?

Detainee: Yes.

Tribunal President: A short recess was taken to get the detainee some water. If you need any help with your drink let please ask and we will be happy to help.

Detainee: I just wanted to say that I don't belong to HIG or al Qaida. I served Americans and they captured and punished me for that.

Tribunal President: I am sorry you said they captured me, who are they? Is that the Americans, Taliban or who?

Detainee: I meant we had some personal problems, somebody. I came and told the Americans about the bomb, and they captured and punished me.

Tribunal President: Ok, thank you.

***The Personal Representative read the accusations to the detainee so that he could respond to the allegations. The allegations appear in italics, below.***

*3.a.1. The detainee had knowledge of a bomb plot against an embassy.*
*3.a.2. The detainee knew where the aforementioned bomb was stored.*
*3.a.3. The detainee was determined to have been involved in an embassy bomb plot.*

Personal Representative: Now is a good time to read the allegations and you can describe to the tribunal about the bomb. All three were tied together

Detainee: There was a girl who told me about this bomb. I told a translator named [redacted] about this plan. An Americans got suspicious of him and later they captured me. About HIG I want to tell you that they killed my 3 brothers and they shot me. Why would I want to be with them or even help them?

Personal Representative: Do you want to tell them of details about bomb plot on how you told the Americans and where it was, the relationship with this girl?

Detainee: I was at my home, and then I went to my shop. This girl named [redacted] told me that they were planning to bring a bomb in order to make an explosion at the American or British embassy when they get the chance. I was talking to [redacted] when she told me about this; I met this man who was an engineer. I told him this story and he introduced me to a translator [redacted] and I told him the story. [redacted] asked me not to tell anyone, because she was afraid they were going to kill her. I went against her will to report it. I told [redacted] to tell the Americans, they wanted her to take them to it, and she explained it was not there yet. When they bring the bomb I will notify you, when they brought the bomb and we told Americans I was detained. American told me how was I going to inform them? I said it's very far I could take a cab, but I don't have any money. They replied we would pay for it. I took the cab; I used the cab driver a couple of times on the last day the cab driver asked me for some money. I told him lets go to the American to get our money, when I got there they detained me. I served you guys and help you.

Personal Representative: Do you want to tell the tribunal where the bomb was?

Detainee: The bomb was in Kabul, in a house were the [redacted] lived. Her sisters' husband was supposed to bring the bomb. I did what they told me to do and now they are accusing me of being Al Qaida, HIG, or Taliban show me the proof. I swear to the Koran that I am innocent.

Personal Representative: Did you want to mention [redacted] name?

Detainee: I am sorry, I am a little dizzy and sick and I forgot to mention his name. [redacted] that was [redacted] sisters name, the house was [redacted] house and [redacted] use to live there. [redacted] told me her sister said a bomb was going to be at the house. I told Americans that the bomb was going to be there, I served you and the other detainee might be al Qaida or Taliban but I am innocent.

Personal Representative: Would you like to talk more about the bomb plot or do you want to move on?

Detainee: I told you everything about that. I want to say I never done anything against you. My children are there like orphans, and I don't know why I am still here. I am innocent.

*3.a.4. The detainee was imprisoned for serving under a Taliban commander.*

Detainee: That is a lie I never served Taliban.

Personal Representative: Were you ever imprisoned, if so under whom?

Detainee: I was in prison for 5 years. put me in prison. I wasn't a director or a commander I was no body my brothers were killed by HIG. There was at some point that HIG and they were united. put me in jail; since these two groups joined I had no one to defend me. It was a person prison for that warlord that is why I was there for 5 years chained up. I had nobody my father was real old and couldn't help me, and you are calling me Taliban or a Terrorist. Why didn't you do research on me I never picked up a gun, I was telling my brother to stop fighting or stop the Jihad and nothing good will come out of fighting.

Personal Representative: Do you remember about how long ago you were in prison?

Detainee: I don't remember the exact day. All I remember was that was the beginning of Rabani's government.

Personal Representative: For the record in our initial interview you we determined it was around 1992-1996 was the time frame he was in the prison. Also the HIG and the came together to fight against the Taliban and you didn't want to fight anybody is that correct?

Detainee: No, it wasn't that way. They were very close with the Taliban; they were close Kabul I didn't want to fight.

Personal Representative: Is there anything you would like to say about the time you were in prison?

Detainee: The only thing I want to add is they were very cruel and they tortured us in the personal prison. This is not a personal prison this is an International Prison so if you can provide all your information that I am a guilty person.

*3.a.5. The detainee was captured with documentation addressing him as a Commander from who is identified as a commander of an unknown region.*

Detainee: He is not a commander he is my neighbor. I am not a commander. If I have ever picked up a gun I am guilty and you can call me a commander. I have never picked up a gun in my life. The only problem was that bomb, did you get it from my house and now you are charging me and calling me a commander. Those people had ties with General he is the minister of defense, and that is why you released them because he had big ties otherwise you would have kept him. I didn't even know him well I just knew his sister.

Personal Representative: Regarding the documentation that you were captured with. Who owned the notebook?

Detainee: That was a very nice notebook and it belonged to my brother. When the new money was issued, I didn't want to crease it so I put it in the notebook to keep it straight.

Personal Representative: Your brother was killed and that is why you kept it?

Detainee: That was the only memory that I had from my brother. It was really nice and I didn't want to write anything on it. Now you are making the memory of brother as evidence against me.

Personal Representative: Can you read and write?

Detainee: No, I am illiterate.

Personal Representative: Why would [redacted] call you commander?

Detainee: He was my neighbor and was a very funny man; he was always joking and making fun and stuff. As a joke he used to call me commander. My kids are literate and they can read and write. They laugh when they read letters that I was being called a commander.

*3.a.6. The detainee was captured with documentation that listed personalities identified as detainee's troops.*

Detainee: I don't know anything about it I can't read or write. I just took it cause of the new money and I wanted to keep it crisp and straight that is why I was using the notebook.

Personal Representative: So did you know what was written in the notebook?

Detainee: No, I told you I couldn't read or write. I didn't keep it to read.

*3.a.7. The detainee was captured with documentation that discussed Blowpipe and Stinger surface to air missiles.*

Detainee: That engineer that I mentioned earlier he used to work for the United Nations. The U.N. asked him to help them with the collection of the weapons all over the country. He told me that this is the price if any commanders wanted to turn in the weapons the government would buy it. Then I told him I was going to forget, so he wrote it down so that I could show them this paper.

*3.a.8. The detainee was alleged a member of Hezbi-Islami Galbuddin (HIG) with ties to al Qaida.*

Detainee: I am not; I didn't belong to any parties. Except one party National Kara van and I had the membership card with me and American took that from me too.

Personal Representative: Who shot you and how many times?

Detainee: Galbuddin killed my 3 brothers, I was standing by the door and I didn't have any weapons with me. They shot me twice once in the foot and the other in my back. You think your self someone killed my brothers and shot me how could I go work for that person.

*3.a.9. HIG is listed on the department of Homeland Security Terrorist Organization Reference Guide.*

Detainee: I am telling you he is a terrorist.

Personal Representative: Do you have any more comments you want to make before questioning?

Detainee: The only statement that I have is that I am innocent. I didn't do anything wrong some times people joked around and called me commander but ask anyone in Afghanistan. You are taking that too serious. My two brothers were killed were with [redacted] that is not my problem they are dead now.

Tribunal President: Does that conclude your statement.

Detainee: I told you all that I can remember. If you have any evidence keep me here for 5 years if you want. I am not feeling good and I am not arguing with you I am begging you. One thing I want to tell you about that guy [redacted] is there was a personal animosity between him and I. The problem is that when I informed American about the bomb they were secretly watching that house. Somehow they found out [redacted] was working with a party as well. He was double crossing Americans.

***The Personal Representative and the Recorder had no further questions.***

*Recorders' Questions.*

Q. To your knowledge did [redacted] ever talk to the investigators?
A. When Americans got suspicious of me then I brought [redacted] as proof what I heard from her. An American girl talk to [redacted], and [redacted] told her the whole story.

Q. So [redacted] you brought to the investigators is that the [redacted] that spoke to you about the bomb plot?
A. Yes.

Q. For clarification were you ever paid by the United States forces?
A. If I were working for the money I wouldn't be in jail. That was service that I did for free and that is why I am here. In the background on the loud speaker there was an announcement that if you see or hear terrorist and report them to us. That is what I did by telling you about the bomb.

*Tribunal Members' Questions.*

Q. Why did [redacted] go to you instead of someone else? Was she a relative or a friend?
A. She is a relative of my wife.

Q. Was your brother who had the notebook in the Taliban or al Qaida?
A. He was killed but was with [redacted].

Q. What was the name of the engineer?
A. [redacted]

Q. You said you are a member of the National Kara van?
A. It is a new party; they were giving weapons to their members. They send people to collect weapons from other fighters/warlords. That engineer gave me a membership to that party and when I got home to show the family, my kids were laughing at me to why I got a card from them, but I kept it.

Q. In your prior testimony you gave the name of that leader?
A. The leader of the party was [redacted]. He was assassinated and now another man named [redacted] is the leader of the party. It is a democratic party.

***<u>Tribunal President's Questions.</u>***

Q. Earlier you said you have a shop. What kind of shop was it?
A. It was a little shop that I ran with the family.

Q. What kind of thing did you sell?
A. We sold fruit, tea, sugar and things like that. I would bring the stuff and my nephew took care of the shop.

***The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.***

<u>AUTHENTICATION</u>

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

[redacted] Colonel, USAF
Tribunal President